UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA
Norfolk Division

JESSICA E.C.,[1]

              Plaintiff,

v.                                          Civil No. 2:22cv248

KILOLO KIJAKAZI,
Acting Commissioner of
Social Security,

              Defendant.

## OPINION AND ORDER

Jessica E.C. ("Plaintiff"), with the assistance of counsel, brought this action seeking judicial review of the final decision of the Acting Commissioner of the Social Security Administration (the "Commissioner") denying her claim for disability and supplemental security income benefits under the Social Security Act. Before the Court are: (1) cross-motions for summary judgment; (2) the Report and Recommendation ("R&R") of the United States Magistrate Judge; (3) Plaintiff's objections to the R&R; and (4) the Commissioner's response to Plaintiff's objections. For the reasons set forth below, the court **ADOPTS** the R&R, ECF No. 21;

---

[1] The Committee on Court Administration and Case Management of the Judicial Conference of the United States has recommended that federal courts use only the first name and last initial of any non-government parties in Social Security cases due to privacy concerns endemic to such cases.

**DENIES** Plaintiff's motion for summary judgment, ECF No. 12; and

**GRANTS** the Commissioner's motion for summary judgment, ECF No. 18.

## I. Procedural Background

Pursuant to 28 U.S.C § 636(b)(1)(B) and Rule 72(b) of the Federal Rules of Civil Procedure, this matter was referred to a United States Magistrate Judge for an R&R.  On July 11, 2023, the Magistrate Judge assigned to this case issued a detailed R&R recommending that Plaintiff's motion for summary judgment be denied, and the Commissioner's cross-motion for summary judgment be granted.  ECF No. 21.  By copy of the R&R, each party was advised of the right to file written objections, and on July 25, 2023, the Court received Plaintiff's objections to the R&R.  ECF No. 22.  The Commissioner filed her response on August 8, 2023. ECF No. 23.

## II. Legal Standard

Under Federal Rule of Civil Procedure 72(b)(3), a district court "must determine de novo any part of the magistrate judge's disposition that has been properly objected to."  Accord 28 U.S.C. § 636(b)(1).  A proper objection is "sufficient[ly] specific[] so as reasonably to alert the district court of the true ground for the objection."  Elijah v. Dunbar, 66 F.4th 454, 460 (4th Cir. 2023) (quoting United States v. Midgette, 478 F.3d 616, 622 (4th Cir. 2007)).  For portions of the R&R for which no proper objection is made, a district court need review only for clear error.

2

Diamond v. Colonial Life & Accident Ins. Co., 416 F.3d 310, 315 (4th Cir. 2005).

In reviewing a final administrative decision, a reviewing court "must uphold the factual findings of the [Administrative Law Judge ("ALJ")] if they are supported by substantial evidence and were reached through application of the correct legal standard." Hancock v. Astrue, 667 F.3d 470, 472 (4th Cir. 2012) (citation omitted). Substantial evidence is "more than a mere scintilla," but requires no more than "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Biestek v. Berrhill, 139 S. Ct. 1148, 1154 (2019) (citations omitted); accord Oakes v. Kijakazi, 70 F.4th 207, 212 (4th Cir. 2023).

In undertaking this review, a reviewing court does not "reweigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the [ALJ]." Mastro v. Apfel, 270 F.3d 171, 176 (4th Cir. 2001) (cleaned up). Though this is a deferential standard of review, the ALJ still "must 'build an accurate and logical bridge' from the evidence to their conclusions" to pass muster. Arakas v. Comm'r, Soc. Sec. Admin., 983 F.3d 83, 94 (4th Cir. 2020) (quoting Monroe v. Colvin, 826 F.3d 176, 189 (4th Cir. 2016)).

### III. Applicable Regulations

The ALJ is required to follow a five-step sequential analysis to evaluate whether an individual has a requisite disability for

3

benefits under the Social Security Act.    20 C.F.R. § 404.1520(a).
The   sequential   analysis   includes   the   following   assessments:
(1)   whether   the   claimant   is   engaged   in   substantial   gainful
activity;   (2)   the   severity   of   the   claimant's   medically
determinable  physical   and  mental  impairments;  (3)  whether  the
claimant has an impairment that meets or equals one of the Social
Security  Administration's  official  impairments;  (4)  whether  an
impairment prevents the claimant from performing any past relevant
work  in  light  of  the  claimant's  residual  functional  capacity
("RFC");  and  (5)  whether  the  claimant  can  adjust  to  employment
other than past relevant work in light of the claimant's RFC, age,
education, and work experience.   Id.

For mental impairment claims (such as Plaintiff's), the ALJ
must  follow  the  assessment  procedure  set  forth  in  20  C.F.R.
§ 404.1520a.[2]    This  "technique"  requires  the  ALJ  to  "rate  the
degree  of  functional  limitation  resulting  from  [any  medically
determinable  mental]  impairment(s)"  in  "four  broad  functional
areas . . . : Understand, remember, or apply information; interact
with  others;  concentrate,  persist,  or  maintain  pace;  and  adapt  or
manage oneself."  20 C.F.R. § 404.1520a(b)(2), (c)(3).  Limitations
in  these  functional  areas  are  rated  on  a  five-point  scale:  none,
mild,  moderate,  marked,  or  extreme.   Id. § 404.1520a(c)(4).   The

---

[2] Plaintiff initially asserted both physical and mental impairments, but she
does not challenge the ALJ's denial of relief with respect to her physical
impairments.  See ECF No. 13.

ALJ uses these ratings to determine the "severity" of the claimant's mental impairments for steps two and three of the five-step analysis. Id. § 404.1520a(d). As particularly relevant here, a limitation is "marked" for purposes of this assessment if the claimant's functioning "independently, appropriately, effectively, and on a sustained basis is seriously limited." 20 C.F.R. Pt. 404, Subpt. P, App'x 1, § 12.00(F)(2)(d). By contrast, a limitation is "extreme" if the claimant is "not able to function . . . independently, appropriately, effectively, and on a sustained basis." Id. § 12.00(F)(2)(e).

Once the ALJ has rated the severity of each impairment, then they will determine if any impairment (or combination thereof) "meets or is equivalent in severity to a listed mental disorder." 20 C.F.R. § 404.1520a(d)(2). If not, then the ALJ will move to steps four and five and assess the claimant's RFC. Id. § 404.1520a(d)(3).[3]

## IV. Discussion

Plaintiff offers two objections to the R&R. First, Plaintiff argues that the Magistrate Judge erred by concluding that the ALJ properly accounted for Plaintiff's mental health limitations when

---

[3] In this case, the ALJ found that Plaintiff has a mild limitation in understanding, remembering, or applying information; a marked limitation in interacting with others; a moderate limitation in concentrating, persisting, or maintaining pace; and a moderate limitation in adapting or managing herself. R. 17–18. Taken together, these impairments did not meet the severity of a listed mental disorder, so the ALJ assessed Plaintiff's RFC. Id. at 18–19.

crafting her RFC.    ECF No. 22, at 1.    Second, Plaintiff argues

that the Magistrate Judge erred by concluding that the ALJ properly

evaluated the opinion of Plaintiff's treating physician, Mark

Schreiber, M.D.   Id. at 4.    The Court addresses each of these

objections in turn.[4]

### A. Accounting for Mental Health Limitations in the RFC

In her motion for summary judgment, Plaintiff argued that the

ALJ — after concluding that Plaintiff suffered from a marked

limitation in her ability to interact with others – failed to

account for this limitation when crafting her RFC.   ECF No. 13, at

12.   The Magistrate Judge disagreed, however, and concluded that

the ALJ's restrictions in the RFC adequately accounted for

Plaintiff's marked limitation in social interaction.   ECF No. 21,

at 18.    Plaintiff now argues that the Magistrate Judge did not

"explore the crux of Plaintiff's argument" that "the ALJ failed to

reconcile the two different legal findings . . . : marked

limitations in social interaction in [Step Three] and moderate

limitation in the RFC determination at Step Four."   ECF No. 22, at

1.    She also argues that, contrary to the Magistrate Judge's

---

[4] The Court reviewed the remainder of the R&R and found no clear error in
the Magistrate Judge's findings or reasoning.   See Elijah, 66 F.4th at 460.

finding, the ALJ failed to explain sufficiently how the evidence in the record supported the RFC determination.  Id. at 3.

As a preliminary matter, the RFC is intended to measure the most that a claimant can do in a work setting despite the mental and physical restrictions imposed by her impairments.  Hines v. Barnhart, 453 F.3d 559, 562 (4th Cir. 2006).  To evaluate a claimant's RFC, the ALJ must first identify each impairment-related functional restriction that is supported by the record.  See Monroe, 826 F.3d at 179.  Then, the ALJ must describe how specific medical facts and evidence support each conclusion, and logically explain how they weighed any contradictory evidence in reaching those conclusions.  Thomas v. Berryhill, 916 F.3d 307, 311 (4th Cir. 2019).

After reviewing the relevant portions of the record de novo, the Court finds that the Magistrate Judge did not err in concluding that the ALJ appropriately accounted for Plaintiff's marked limitation in social interaction in crafting her RFC.  Here, the ALJ thoroughly explained his RFC analysis, including providing an extensive discussion of the key record evidence and clear reasoning regarding the extent of the restrictions incorporated in the RFC. R. 19-24.  Even if the ALJ's explanation at times could have been clearer, the ALJ's discussion sufficiently supports and explains

his conclusions regarding the appropriate RFC. Plaintiff's arguments to the contrary are unpersuasive.

First, Plaintiff argues that the ALJ found a "marked" limitation in social interaction at step three and a "moderate" limitation in the same in her RFC, but Plaintiff is mistaken. After concluding at step three that Plaintiff has a marked limitation in social interaction, R. at 17, the ALJ noted that the RFC requires "a more detailed assessment of the areas of mental functioning." R. at 18. Accordingly, the ALJ thoroughly discussed both Plaintiff's treatment history as well as the various medical opinions in her record. See R. at 19-21. In doing so, he evaluated and ultimately agreed with a medical assessment performed by Joseph Leitzer, Ph.D. in 2018. R. at 21. In relevant part, Dr. Leitzer opined that Plaintiff was "moderately limited" in her ability to interact with the public, but that she was capable of limited social contact. R. 124-25; see R. at 21.

In assessing Plaintiff's RFC, the ALJ then assigned several restrictions "which correspond to the moderate [social] limitations that Dr. Leitzer identified." R. at 22. But the ALJ did not forget his Step Three assessment. He went on to note that his restriction to unskilled jobs "'ordinarily involve[s] dealing primarily with objects, rather than with data or people,' which is consistent with the marked limitation in social functioning noted above." Id. (quoting Social Security Ruling ("SSR") 85-15, 1985

WL 56857, at *4).   Though the ALJ could have provided a clearer assessment, the ALJ was not in effect contradicting himself by noting that his restrictions were consistent both with Dr. Leitzer's finding of a moderate limitation and the ALJ's own prior finding of a marked limitation.   Because the ALJ did not adopt a lesser disabling social limitation in constructing the RFC, Plaintiff's argument fails.

Plaintiff next argues that the ALJ did not adequately explain how her marked limitation in social contact was consistent with the limitations in her RFC.   ECF No. 22, at 3.   As crafted by the ALJ, the RFC ultimately restricts Plaintiff to "rare interaction with the public" and "occasional interaction with co-workers and supervisors."   R. at 19.   But this reflects the sum of the ALJ's social limitations.   In the ALJ's assessment of Plaintiff's social interaction abilities, he assigns "limitations for simple tasks with limited supervisor and public contact," and "occasional contact with coworkers."   R. at 22.   It is only when the ALJ considers Plaintiff's moderate limitations in concentration, persistence, and pace that he limits her to no more than "rare interaction with the public" and "occasional interaction with the supervisors or coworkers."   Id.

But to the extent that Plaintiff argues that a marked limitation in social interaction requires more extensive restrictions in the RFC, this argument is unpersuasive.   The

9

restrictions in the RFC are fully consistent with Plaintiff's marked limitation in social interaction. See, e.g., Fiducia v. Comm'r of Soc. Sec., No. 1:13cv285, 2015 WL 4078192, at *4 (N.D.N.Y. July 2, 2015) (noting that a marked limitation in social interaction can be adequately accounted for through an RFC that limits the claimant to occasional interaction with the public and coworkers); Dorsey v. Berryhill, No. 3:18cv103, 2019 WL 1140178, at *4-5 (E.D. Tenn. Mar. 12, 2019) (finding that a limitation to occasional interaction with supervisors and coworkers adequately accounted for finding of marked limitation in social interaction); Kane v. Saul, No. 3:18cv746, 2019 WL 7562760, at *12 (E.D. Va. Aug. 20, 2019) (finding that substantial evidence supported RFC assessment that limited the plaintiff to no interaction with the public and occasional interaction with co-workers and supervisors despite a finding of a marked limitation in interacting with others at step 3), report and recommendation adopted, 2020 WL 130134 (E.D. Va. Jan. 10, 2020) (vacating and remanding Commissioner's final decision on other grounds).

Finally, Plaintiff contends that the ALJ did not explain properly how Plaintiff is able to perform unskilled work despite her marked limitation in social interaction. ECF No. 22, at 4. Unskilled work requires, in relevant part, the ability to:

> "respond appropriately to supervision, coworkers, and usual work situations . . . . A substantial loss of ability to meet any of these basic work-related

activities would severely limit the potential occupational base.  This, in turn, would justify a finding of disability."

SSR 85-15, 1985 WL 56857, at *4.

It is Plaintiff's contention that the ALJ's finding of a marked limitation in social interaction is inconsistent with the requirements for unskilled work as defined by SSR 85-15.  But as the Magistrate Judge noted, "substantial loss cannot be precisely defined," so a marked limitation does not necessarily equate to a substantial loss for purpose of SSR 85-15.  ECF No. 21, at 21 (citing POMS DI 25020.010(A)(3)(b)).  The Court is aware of no authority finding that a marked limitation in social interaction alone necessarily constitutes a "substantial loss of ability" that necessitates a finding of disability.  See ECF No. 13, at 16. Indeed, if anything, SSR 85-15 reinforces the individualized nature of this assessment.  See SSR 85-15, 1985 WL 56857, at *5 (noting that the section "is not intended to set out any presumptive limitations for [mental] disorders, but to emphasize the importance of thoroughness in evaluation on an individualized basis").  And it is clear from the ALJ's thorough discussion of Plaintiff's RFC that he found through an individualized assessment that Plaintiff can work in unskilled roles with the limitations proscribed in her RFC.

Thus, the Magistrate Judge did not err in finding that the ALJ sufficiently accounted for Plaintiff's marked limitation in

11

social interaction when crafting her RFC. For the reasons explained above and in the R&R, substantial evidence supports the ALJ's RFC determination, and it is not for this Court to reweigh the evidence or to substitute its judgment for that of the ALJ. Mastro, 270 F.3d at 176. Therefore, the Court overrules Plaintiff's objection regarding the ALJ's consideration of Plaintiff's mental health limitations.

## B. Evaluation of Dr. Schreiber's Opinion

Plaintiff next argues that the Magistrate Judge erroneously accepted the ALJ's "terse and conclusory rejection" of the medical opinion of Plaintiff's treating physician, Dr. Mark Schreiber, M.D. ECF No. 22, at 5. In his 2018 medical evaluation, Dr. Schreiber noted on a checklist that Plaintiff had marked and extreme limitations in every area of mental functioning. R. 1028–29. In September 2021, Dr. Schreiber added a note to his 2018 assessment reporting that Plaintiff's condition had worsened because she no longer drove, did not leave the house, and was sad most of the time. R. 1181.

The ALJ reviewed these opinions but gave them little weight after concluding that Dr. Schreiber's opinion was inconsistent with substantial evidence in the record. See R. 23. The Magistrate Judge agreed, finding that the ALJ's assessment of Dr. Schreiber's opinion is supported by substantial evidence in the record. ECF No. 21, at 26–29. This Court begins by reviewing the

12

relevant regulatory framework for assessing medical opinion evidence from a treating medical provider before turning to Plaintiff's specific challenge to the R&R.

### 1. Framework for Assessing Medical Opinions

For disability claims filed before March 27, 2017 (such as Plaintiff's), medical opinions by treating providers are entitled to "controlling weight" unless the opinion is based on medically unacceptable clinical or laboratory diagnostic techniques, or it is inconsistent with other substantial evidence in the record. 20 C.F.R. § 404.1527(c)(2).

If the ALJ determines that the treating physician's opinion is not entitled to controlling weight, then the ALJ must determine the proper weight to afford the opinion by considering several factors: (1) the treatment relationship with the claimant; (2) supportability; (3) consistency; (4) specialization; and (5) any other factors "which tend to support or contradict the medical opinion." Id. § 404.1527(c)(2)-(6). Supportability measures the extent to which a source explains its medical opinion and supports its findings with relevant evidence. Id. § 404.1527(c)(3). Consistency is a measure of how "consistent a medical opinion is with the record as a whole." Id. § 404.1527(c)(4).

Though the ALJ is "not required to set forth a detailed factor-by-factor analysis in order to discount a medical opinion

13

from a treating physician," it must be clear from the decision that the ALJ considered each factor before deciding how much weight to give the opinion. Dowling v. Comm'r of Soc. Sec. Admin., 986 F.3d 377, 385 (4th Cir. 2021). Finally, when a source offers multiple medical opinions, the ALJ need not explain how he considered each opinion — a single analysis may suffice. 20 C.F.R. § 404.1520c(b)(1). This framework guides the Court's review below.

## 2. Analysis

Plaintiff argues that the ALJ ignored "complete lines of evidence" when he concluded that Dr. Schreiber's opinion in the 2018 evaluation was "not consistent with the longitudinal evidence of [Plaintiff's] treatment" and therefore not entitled to controlling weight. ECF No. 22, at 4 (quoting R. 23). Specifically, Plaintiff asserts that the ALJ, as well as the Magistrate Judge, failed to consider evidence from Deborah Reese, LCSW and Barbara Haskins, Psy.D, which were consistent with Dr. Schreiber's opinion. Id. at 5. Thus, she argues, the ALJ's conclusion discounting Dr. Schreiber's opinion is not supported by substantial evidence. Plaintiff further claims that the Magistrate Judge based his finding on post hoc rationalization rather than the ALJ's own reasoning. Id. But based on the Court's de novo review of the relevant portions of the record, the Court agrees with the Magistrate Judge that substantial evidence

14

supports the ALJ's determination of the weight afforded to Dr. Schreiber's opinion.  ECF No. 21, at 26-29.

### a. Erroneous Evaluation of Dr. Schreiber's Findings

Notwithstanding Plaintiff's argument to the contrary, the ALJ did not ignore "complete lines of evidence" when he concluded that Dr. Schreiber's medical opinion was contradicted by the record. As a preliminary matter, though the ALJ must generally consider every medical opinion in the record, 20 C.F.R. § 404.1527(a)(1), "there is no rigid requirement that the ALJ specifically refer to every piece of evidence in [his] decision."  Reid v. Comm'r of Soc. Sec., 769 F.3d 861, 865 (4th Cir 2014) (internal citation and quotation marks omitted).  Though the ALJ did not reference Ms. Reese by name, he quoted from her records extensively in discussing Plaintiff's treatment history and consistency with Dr. Schreiber's medical opinion.  See R. 17-18, 21, 23-24.  As did the Magistrate Judge, for that matter.  See ECF No. 21, at 28 (citing the ALJ's reference to Ms. Reese's records).  Indeed, it was Ms. Reese's records which indicated that Plaintiff attended AA meetings daily and had taken her daughter to meet her father at Top Golf, both of which were inconsistent with Dr. Schreiber's medical opinion noting that she did not leave the house.  See R. 23, 1125, 1194.

Nor did the ALJ or Magistrate Judge overlook Dr. Haskins's observations.  On the contrary, the ALJ noted that he found Dr. Haskins's observations "informative" but ultimately gave her

15

assessment little weight because it was "internally inconsistent." R. at 22-23; see also ECF No. 21, at 19.  The ALJ reasoned that though Dr. Haskins opined that Plaintiff's ability to attend work was "poor," she also found that Plaintiff exhibited no cognitive deficits, required no heightened supervision, and exhibited appropriate social functioning.  See R. 22-23; see also ECF No. 21, at 19.  Having already concluded that Dr. Haskins's opinion warranted little weight, the ALJ was not required to explain why any statement purportedly consistent with Dr. Schreiber's medical opinion did not entitle his opinion to greater weight.  See Smith v. Astrue, 457 F. App'x 326, 328 (4th Cir. 2011) (reading and considering the ALJ's decision in its entirety to determine whether substantial evidence supports the decision).

Though Plaintiff would have preferred that the ALJ credit certain statements from certain providers over others, as noted herein, it is not the role of this Court to reweigh conflicting evidence or substitute its judgment for the ALJ's.  See Hancock, 434 F.3d at 476.  Plaintiff's objection to the Magistrate Judge's analysis is therefore overruled.

### b. Post Hoc Rationalization

Plaintiff's final argument is that the Magistrate Judge based his conclusion on a "post hoc rationalization of evidence that was

not included in the ALJ's [decision]."   R. 22, at 4.[5]   Plaintiff

argues that this alleged post hoc rationalization is improper and

requires remand.   Id. at 4–5.

Plaintiff   is   correct   that   long-standing   principles   of

administrative law prohibit reviewing courts from affirming agency

action on any basis other than that articulated by the agency

itself.   See Kirk v. Comm'r of Soc. Sec. Admin., 987 F.3d 314, 321

(4th Cir. 2021); Arakas, 983 F.3d at 109.   But even assuming that

the Magistrate Judge's discussion of supporting examples in the

record was more robust than the ALJ's, remand is not warranted.

First, Plaintiff fails to demonstrate that the Magistrate

Judge relied on some reason other than those offered by the ALJ to

affirm   the   ALJ's   evaluation   of   Dr.   Schreiber's   opinion.

Importantly, the Magistrate Judge found that that the ALJ properly

discounted Dr. Schreiber's opinions because his opinion was not

consistent   with   the   "longitudinal   evidence   of   Plaintiff's

treatment,"   including   Plaintiff's   treatment   records,   and   Dr.

Schreiber's own notes.   ECF No. 21, at 26–27.   The fact that the

Magistrate   Judge   further   substantiated   the   ALJ's   conclusion   by

reference to additional specific examples in Plaintiff's treatment

---

[5] It is unclear what evidence, specifically, Plaintiff takes issue with.
Indeed, her argument is limited to a general assertion that the Magistrate
Judge "engage[d] in a discussion of evidence that simply did not exist in
the ALJ's decision."   ECF No. 22, at 5.   But the Court endeavors to fully
address Plaintiff's argument and focuses its analysis on pages 26 through
28 of the R&R as referenced by Plaintiff.

records — treatment records which the ALJ cited extensively and noted that he had reviewed — does not undercut the preceding conclusion.  <u>See</u> R. 19-23.

Second, even assuming for the sake of argument that the Magistrate Judge's inclusion of additional examples could be said to include post hoc reasoning, these examples do not undercut the judicial conclusion that the ALJ's explanation of the shortcomings and inconsistencies of Dr. Schreiber's opinion is sufficient to support the ALJ's ruling.  In other words, on de novo review and without relying on any post hoc reasoning, this Court finds that the ALJ provided a sufficient explanation for finding Dr. Schreiber's opinion unpersuasive.[6]  Plaintiff's objection is therefore overruled.

### V. Conclusion

For these reasons, the R&R is **ADOPTED**, ECF No. 21, Plaintiff's summary judgment motion is **DENIED**, ECF No. 12, the Commissioner's summary judgment motion is **GRANTED**, ECF No. 18, and the final decision of the Commissioner is **AFFIRMED**.  The Clerk is requested

---

[6] As noted herein, so long as the ALJ's ruling is supported by substantial evidence, it is not the role of this Court to substitute its judgment for the ALJ's, even if the Court believes that a contrary ruling would likewise be reasonable.  Here, the ALJ's discounting of Dr. Schreiber's opinion is sound because his medical opinion was inconsistent with "other substantial evidence" in the record including Dr. Schreiber's treating notes and other evidence cited by the ALJ.  <u>See</u> 20 C.F.R. § 404.1527(c)(2).

to forward a copy of this Opinion and Order to all counsel of record.

**IT IS SO ORDERED.**

/s/ _____

Mark S. Davis
CHIEF UNITED STATES DISTRICT JUDGE

Norfolk, Virginia
September 15 , 2023

19